UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DIEGO M.-Y.,                                          Case No. 26-CV-2048 (PJS/DTS)

                    Petitioner,

v.                                                    ORDER

SAMUEL OLSON, Director of St. Paul Field
Office, U.S. Immigration and Customs
Enforcement; MARKWAYNE MULLIN,
Secretary of the U.S. Department of
Homeland Security; and TODD BLANCHE,
Acting Attorney General of the United
States, in their official capacities,

                    Respondents.

Steven T. Appelget, APPELGET LAW OFFICE, for petitioner.

David W. Fuller and Pedro Del Valle, IV, UNITED STATES ATTORNEY'S
OFFICE, for respondents.

This matter is before the Court on petitioner Diego M.-Y.'s petition for a writ of

habeas corpus.[1]  Diego, a citizen of Ecuador, unlawfully entered the United States on

February 18, 2021.  Pet. ¶ 8.  Diego was apprehended near the border, detained, and

then released on parole in April 2021.  *Id.* ¶¶ 13–14; ECF No. 7 at 2; ECF No. 5-1.

A "credible fear" interview for Diego was scheduled but later cancelled.  Pet. ¶¶ 15–16.

Diego, through counsel, applied for asylum on March 7, 2022.  *Id.* ¶ 8.  Diego has no

---

[1]Pursuant to this District's policy in immigration cases, the Court identifies
petitioner only by first name and last initials.

known criminal record, has received a work permit, and has complied with all conditions of his parole. *Id.* ¶¶ 19–21. On June 26, 2025, Diego received a letter stating that his asylum application "could not be processed" but that a credible-fear hearing would be scheduled. *Id.* ¶¶ 22–24.

Diego had no further contact with Immigrations and Customs Enforcement ("ICE") until he was apprehended at the Anoka County courthouse on March 25, 2026, while picking up a vehicle that had been seized from his brother-in-law. *Id.* ¶¶ 25–27. Diego has since been detained at the Sherburne County Jail. *Id.* ¶ 2. ICE issued an I-200 administrative warrant for Diego and a Notice to Appear ("NTA") placing Diego in removal proceedings on March 26, 2026. ECF No. 6-1 at 3–7. Respondents also proffer a Form I-213 "Record of Deportable/Inadmissible Alien," also dated March 26, 2026, which asserts that Diego "was processed as an expedited removal" upon his arrival to the United States in 2021 and notes that Diego was "possibly not served with a previously issued NTA." *Id.* at 8–10.

Diego seeks habeas relief based on respondents' allegedly unlawful termination of his release on parole. *See* Pet. ¶¶ 29–34 (citing 8 C.F.R. § 241.13(i)(2)–(3)). The regulations Diego cites authorize ICE to revoke an alien's supervised release only when certain conditions are met. *See* 8 C.F.R. § 241.13(i)(2) (authorizing revocation only on account of (1) a violation of the conditions of an alien's supervised release, or (2) a

determination by ICE that the alien's removal is significantly likely in the reasonably foreseeable future due to "changed circumstances"); 8 C.F.R. § 241.13(i)(3) (requiring ICE to provide an alien notice of the reasons for revocation and "an initial informal interview promptly after his . . . return to [ICE] custody to afford [him] an opportunity to respond to the reasons for revocation stated in the notification").

Diego's reliance on 8 C.F.R. § 241.13 is mistaken, however.  That regulation specifically *excludes* paroled aliens from its scope, *see* 8 C.F.R. § 241.13(b)(3)(i), and applies only to aliens who are subject to a final order of removal, *see id.* § 241.13(a). A different regulation—8 C.F.R. § 212.5(e)—provides the process for "[t]ermination of [an alien's] parole."

Under 8 C.F.R. § 212.5(e), respondents must provide written notice of their decision to terminate an alien's parole except in the case of (1) departure of the alien from the United States or (2) expiration of the time for which parole was authorized. The regulation provides that:

> [U]pon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated *upon written notice to the alien* and he or she shall be restored to the status that he or she had at the time of parole.

8 C.F.R. § 212.5(e)(2)(i) (emphasis added).  This makes sense, as 8 U.S.C. § 1182(d)(5)(A) gives the government broad discretion to determine "when the purposes of [an alien's] parole shall . . . have been served" and further authorizes the return of that alien "to the custody from which he was paroled," after which point "his case shall continue to be dealt with in the same manner as that of any other applicant for admission . . . . "

Respondents, for their part, do not contest the fact or validity of Diego's parole. Indeed, respondents include a record of Diego's detention history reflecting that Diego was released on parole.  ECF No. 5-1.  Nor do respondents argue that Diego's parole expired or was lawfully terminated.  In fact, respondents mischaracterize petitioner's (incorrect) argument under 8 C.F.R. § 241.13 as being a (correct) argument under 8 C.F.R. § 212.5(e).  *See* ECF No. 6 at 2 ("The primary issued raised by Petitioner is that, regardless of the statutory basis of detention, the detention is unlawful because it does not comport with . . . 8 C.F.R. § 212.5(e)(2)(i).").  Respondents do not, however, analyze the lawfulness of the termination of Diego's parole under 8 C.F.R. § 212.5(e)(2)(i).

Instead, respondents focus almost entirely on the Eighth Circuit's recent decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).  *Avila* held that an alien who enters the United States unlawfully and is not "clearly and beyond a doubt entitled to be admitted" is "seeking admission" and therefore is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  *Id.* at 1133, 1137–38.

Like Diego's reliance on 8 C.F.R. § 241.13, respondents' reliance on *Avila* is misplaced. Unlike the petitioner in *Avila*—who entered the United States unlawfully and lived here for years—Diego was apprehended at the border and detained as an "arriving alien." *See Aldana v. Collins*, No. 26-CV-335, 2026 WL 673827, at *3 (W.D. Tex. Mar. 9, 2026) ("Humanitarian parole is the form of release available under the INA for an 'arriving' noncitizen who is subject to mandatory detention under § 1225(b)(2)(A)." (citations omitted)). "If the government was going to detain [Diego] for removal proceedings, that was the time." *Chourio Herrera v. Bondi*, No. 26-CV-1895 (JMG/DLM), 2026 WL 827571, at *2 (D. Minn. Mar. 25, 2026). In other words, although respondents had authority under § 1225(b)(2)(A) to detain Diego when he arrived at the border in February 2021, they chose instead to parole him. Having chosen to parole Diego, respondents must now comply with 8 C.F.R. § 212.5(e) when seeking to revoke that parole. *See id.*

As explained above, respondents could lawfully revoke Diego's parole only (1) upon a finding that the purpose for which Diego's parole was authorized has been accomplished *or* upon a finding that "neither humanitarian reasons nor public benefit warrants the continued presence of [Diego] in the United States" *and* (2) "upon written notice to [Diego]." 8 C.F.R. § 212.5(e)(2)(i). The record contains no evidence of such a finding and no evidence of such written notice. Respondents acted unlawfully in

terminating Diego's parole, and they must release him from custody.[2]

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.      Petitioner's petition for a writ of habeas corpus [ECF No. 1] is GRANTED.

2.      Respondents must release petitioner from custody by 5:00 pm on April 25,

2026.  If petitioner is not in Minnesota, respondents must return petitioner

to Minnesota before releasing him.

3.      The remainder of petitioner's petition is DENIED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: April 23, 2026                          /s/ Patrick J. Schiltz
                                               Patrick J. Schiltz, Chief Judge
                                               United States District Court

---

[2]Because the Court finds that ICE violated its own regulation in re-detaining Diego, the Court does not reach the question of whether ICE also violated the Constitution (as alleged in Diego's petition).